Opinion issued December 30, 2014



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-13-01005-CV

———————————

## HARRIS COUNTY, TEXAS, Appellant

## V.

## KENNETH BANKHEAD, Appellee

---

**On Appeal from the 80th District Court**
**Harris County, Texas**
**Trial Court Case No. 2012-69289**

---

## MEMORANDUM OPINION

Harris County brings this interlocutory appeal challenging the trial court's

denial of its plea to the jurisdiction on the employment discrimination claim

brought by Kenneth Bankhead under Chapter 21 of the Labor Code.[1]  The County contends that the court lacked subject matter jurisdiction over Bankhead's race discrimination claim.  In a cross-appeal, Bankhead argues that the portion of the trial court's order ruling that he is collaterally estopped from litigating at trial the issue of whether he used excessive or unjustified force is in error.  We reverse the trial court's order denying the County's plea to the jurisdiction, render judgment granting the plea to the jurisdiction, and dismiss the case for lack of subject matter jurisdiction with prejudice.

## Background

Bankhead was hired as a detention officer with the Harris County Sheriff's Office (HCSO) in 1991, became a deputy in 1994, and was later promoted to sergeant in 2005.  In December 2007, Bankhead was assigned to the County's Mental Health Unit and, in 2010, he was transferred to the unit's housing floor.  The record reflects that Bankhead consistently received good performance evaluations throughout his employment.

On January 26, 2011, Bankhead was instructed to check on inmate Vincent Mastroianni after Mastroianni's mother contacted the HCSO regarding her son's

---

[1]     TEX. LAB. CODE ANN. § 21.051 (West 2006).

request for medical attention.[2]  When Bankhead arrived at Mastroianni's cellblock, a verbal altercation between the men ensued.  Bankhead struck Mastroianni in the face with his forearm resulting in a laceration above the inmate's eye that required fourteen sutures.[3]

In compliance with HCSO policy, Internal Affairs Division (IAD) investigator Donald Althouse initiated an investigation of the incident[4] and submitted his report to the Administrative Disciplinary Committee (ADC) for review and recommendation.[5]  Citing "policy violations, unjustified use of force," the ADC recommended termination of Bankhead's employment and the HCSO

---

[2]    Mastroianni's mother called the sheriff's office after her son asked to see a dentist due to mouth pain but received no response from jail personnel.

[3]    There is conflicting evidence as to whether the laceration was caused by Bankhead's forearm or whether Matroianni lost his balance and, in doing so, struck his face against the wall.

[4]    HCSO policy requires that every incident involving use of force against an inmate in the jail be documented and reported to the division commander who determines whether to initiate an internal investigation.  If an investigation is initiated, an IAD investigator conducts an investigation and presents his report to the Administrative Disciplinary Committee (ADC) for review and recommendation. If the ADC finds sustained misconduct and/or a violation of policy, it recommends appropriate disciplinary action against the employee. The employee may file a written notice of appeal to the Sheriff and, if the Sheriff or the Sheriff's designee upholds the disciplinary action, the employee may then file a written notice of appeal with the Civil Service Commission. If the Commission upholds the disciplinary action against the employee, the employee may proceed with litigation.

[5]    The Committee at that time consisted of four members: Major Edwin Davis, then-Major Fred Brown (he subsequently became Chief Deputy), Captain Joe Hughes, and Major Ronnie Silvio (now retired).  Davis and Brown are African-American and Hughes and Silvio are Caucasian.

sent a letter to Bankhead outlining the violations resulting in his termination on July 29, 2011. Specifically, the HCSO found that Bankhead had violated Section 300, Policy #302 ("Professional Conduct Required"), II., subsection E.2; Policy #303 (Conduct Prohibited"), I., subsections B, C.7 & 13 and D.14 & 17; Policy #305 ("Performance of Duty"), I., subsections C & E; Policy #307 ("Supervisory Responsibility"), I., subsection J; and Policy #501 ("Force, Arrest, and Detention"), I., subsection A.11 of the HCSO's policies and regulations. The letter also stated that a review of Bankhead's personnel history revealed that he was involved "in an extraordinary amount of use of force incidents within the last three (3) years."[6]

The HCSO designee upheld the termination decision, and Bankhead appealed his termination to the Civil Service Commission. Following a hearing on March 22, 2012, the Commission upheld the HSCO's decision based on the specific policy violations enumerated in the termination letter.[7]

On November 21 2012, Bankhead filed suit against the County, alleging race discrimination and retaliation under Chapter 21 of the Labor Code. *See* TEX. LAB.

---

[6] The record reflects that Bankhead was involved in eight use-of-force incidents in his positon as sergeant, including the incident involving Mastroianni, between February 2008 and July 2011, when his employment was terminated.

[7] We note that on Bankhead's performance evaluation dated June 19, 2011—six months after the January 2011 incident and a little more than a month before the July 29, 2011 termination letter—he was evaluated as "above average" in nine of the fifteen categories and as "average" in the remaining six categories.

CODE ANN. § 21.051 (West 2006). The County moved for summary judgment and the trial court granted the motion on Bankhead's retaliation claim but denied it as to his race discrimination claim. The County subsequently filed a plea to the jurisdiction, Bankhead filed a response, and the County supplemented its plea. The trial court's denial of the plea to the jurisdiction precipitated the County perfecting this interlocutory appeal.

## Discussion

In its first and second issues, the County contends that the trial court erred in denying its plea to the jurisdiction. Specifically, it argues that Bankhead failed to present a prima facie case to support his race discrimination claim and, thus, the trial court lacks subject matter jurisdiction over that claim.

### A. Plea to the Jurisdiction

A plea to the jurisdiction is a dilatory plea that seeks dismissal of a case for lack of subject matter jurisdiction. *Harris Cnty. v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004). The plaintiff has the burden to allege facts that affirmatively demonstrate that the trial court has subject matter jurisdiction. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993). A plea to the jurisdiction can be utilized to challenge whether the plaintiff has met his burden of alleging jurisdictional facts, but it can also raise a challenge to the existence of jurisdictional facts. *See Tex. Dept. of Parks & Wildlife v. Miranda*, 133 S.W.3d

5

217, 226–27 (Tex. 2004). Pleadings are construed liberally in favor of the pleader, and all factual allegations are accepted as true. *See id.* at 226.

A trial court's review of a plea to the jurisdiction challenging the existence of jurisdictional facts mirrors that of a traditional motion for summary judgment. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 635 (Tex. 2012); *Miranda*, 133 S.W.3d at 228; *see* TEX. R. CIV. P. 166a(c). The government defendant is required to meet the summary judgment standard of proof for its assertion that the trial court lacks jurisdiction; once the defendant meets its burden, the plaintiff is then required to show that there is a disputed material fact regarding the jurisdictional issue. *Miranda*, 133 S.W.3d at 228. If the evidence creates a fact question regarding jurisdiction, the trial court must deny the plea to the jurisdiction and leave its resolution to the fact finder. *Id.* at 227–28. On the other hand, if the evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law. *Garcia*, 372 S.W.3d at 635. An appellate court reviewing a challenge to a trial court's subject matter jurisdiction reviews the trial court's ruling de novo. *Miranda*, 133 S.W.3d at 228.

## B. Sovereign Immunity and Chapter 21 of the Labor Code

Sovereign immunity deprives a trial court of jurisdiction over lawsuits in which the state or certain governmental units have been sued unless the state

6

consents to suit. *Sykes*, 136 S.W.3d at 638. Chapter 21 of the Labor Code delineates Texas' limited waiver of sovereign immunity for employment discrimination and retaliation claims. *See* TEX. LAB. CODE ANN. §§ 21.051(1), 21.055 (West 2006) (prohibiting unlawful employment practices by "employer"); § 21.002(8)(D) (defining "employer" to include a county, municipality, state agency, or state instrumentality). A plaintiff must plead the elements of his statutory cause of action, that is, the basic facts comprising a prima facie case, for the court to determine if a Chapter 21 violation has been sufficiently alleged. Once having done so, the plaintiff is required to submit evidence only if the defendant presents evidence negating one of those basic facts. *Garcia*, 372 S.W.3d at 637 (citing *Miranda*, 133 S.W.3d at 228).

Texas courts look to federal interpretation of analogous federal statutes for guidance because an express purpose of Chapter 21 is to "provide for the execution of the policies of Title VII of the Civil Rights Act of 1964 and its subsequent amendments." TEX. LAB. CODE ANN. § 21.001(1) (West 2006); *see also NME Hosps., Inc. v. Rennels*, 994 S.W.2d 142, 144 (Tex. 1999). Where no direct evidence of discrimination is proffered and the plaintiff relies exclusively on circumstantial evidence to establish his claim, a burden-shifting framework established by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05, 93 S. Ct. 1817, 1824–26 (1973) is employed

whereby a plaintiff must first establish a prima facie case of discrimination or retaliation. *Id.* at 802, 93 S. Ct. at 1824. Establishment of the prima facie case in effect creates a presumption that the employer unlawfully discriminated against the employee. *Tex. Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254, 101 S. Ct. 1089, 1094 (1981). If the plaintiff is successful, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 477 (Tex. 2001). "The offer of a legitimate reason eliminates the presumption of discrimination created by the plaintiff's prima facie showing." *Id.* The burden then shifts back to the plaintiff to show that the employer's reason was a pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 807, 93 S. Ct. at 1826–27. Although intermediate evidentiary burdens shift back and forth under this framework, the ultimate burden of persuading the trier-of-fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143, 120 S. Ct. 2097, 2106 (2000).

## C. Race Discrimination

Chapter 21 of the Labor Code provides that it is unlawful for an employer to discriminate against an employee with respect to compensation or the terms, conditions, or privileges of employment because of race, color, disability, religion, sex, national origin, or age. TEX. LAB. CODE ANN. § 21.051. To establish a prima

8

facie case of race discrimination based on disparate treatment under Chapter 21, a plaintiff must show that he was (1) a member of a protected class, (2) qualified for the employment position at issue, (3) subject to an adverse employment action, which includes termination, and (4) treated less favorably than similarly situated members outside of the protected class. *Reeves*, 530 U.S. at 142, 120 S. Ct. at 2106; *Ysleta Indep. Sch. Dist. v. Monarrez*, 177 S.W.3d 915, 917 (Tex. 2005).

With regard to the fourth element, "an employee who proffers a fellow employee as a comparator [must] demonstrate that the employment actions at issue were taken 'under nearly identical circumstances.'" *See Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 259–60 (5th Cir. 2009). The Texas Supreme Court has held that employees are similarly situated "if their circumstances are comparable in all material respects, including similar standards, supervisors, and conduct." *Monarrez*, 177 S.W.3d at 917. Further, to establish that employees are "comparable in all material respects," a plaintiff must also show "that there were no 'differentiating or mitigating circumstances as would distinguish . . . the employer's treatment of them.'" *Ineichen v. Ameritech*, 410 F.3d 956, 960–61 (7th Cir. 2005) (quoting *Radue v. Kimberly–Clark Corp.*, 219 F.3d 612, 617–18 (7th Cir. 2000)); *see Edwards v. Grand Casinos of Miss., Inc.*, 145 F. App'x 946, 948 n.2 (5th Cir. 2005) (noting that, as to similarly situated requirement, circumstances surrounding the compared employees must be "nearly identical") (citing *Wallace v.*

9

*Methodist Hosp. Sys.*, 271 F.3d 212, 221 (5th Cir. 2001) and *Wyvill v. United Cos. Life Ins. Co.*, 212 F.3d 296, 304–05 (5th Cir. 2000)).

In a disparate discipline case, "the disciplined and undisciplined employees' misconduct must be of 'comparable seriousness.'" *Monarrez*, 177 S.W.3d at 917. The *Monarrez* court noted that although the United States Supreme Court had previously held that "precise equivalence in culpability between employees is not the ultimate question," the Fifth Circuit had held that "the plaintiff must usually show 'that the misconduct for which [the employee] was discharged was nearly identical to that engaged in by a[n] employee whom [the company] retained.'" *Id.* at 917–18 (quoting *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 283 n.11, 96 S. Ct. 2574, 2580 (1976) and *Smith v. Wal–Mart Stores, Inc.*, 891 F.2d 1177, 1180 (5th Cir. 1990)). "Employees with different responsibilities, supervisors, capabilities, work rule violations, or disciplinary records are not considered to be 'nearly identical.'" *AutoZone, Inc. v. Reyes*, 272 S.W.3d 588, 594 (Tex. 2008); *see also Lee*, 574 F.3d at 260 (noting employment actions being compared will be deemed to have been taken under nearly identical circumstances when employees being compared held same job or responsibilities, shared same supervisor or had employment status determined by same person, and have essentially comparable violation histories); *Okoye v. Univ. of Tex. Hous. Health Sci. Ctr.*, 245 F.3d 507, 514 (5th Cir. 2001) (holding that comparisons to other

10

employees not terminated were inapplicable because other employees violated different workplace rules and thus were not "nearly identical"); *Miller v. Auto. Club of New Mexico, Inc.*, 420 F.3d 1098, 1115 (10th Cir. 2005) (noting that employees who hold different job positions are not similarly situated).

## D. Analysis

The County does not dispute that Bankhead has alleged the four elements of a race discrimination claim. Rather, it challenges the existence of facts supporting the fourth element of his prima facie case—that is, whether there is evidence showing that he was treated less favorably than similarly situated members outside of the protected class. Specifically, the County asserts that the comparators identified by Bankhead are not similarly situated. Bankhead maintains that he has presented sufficient evidence to create a fact issue as to the fourth element of his race discrimination claim and, thus, the trial court correctly denied the County's plea to the jurisdiction.

Bankhead's response to the plea identified three Caucasian employees whom he contends are similarly situated and engaged in similar conduct but who were not terminated or, alternatively, only suspended: John Revelle, William Dickerson, and Kevin Gaeke.[8]

---

[8] The County avers in its brief that Bankhead also sought to compare himself to three other terminated detention officers—Chris Pool, Chris Taylor, and Joseph Jameson. However, as Bankhead did not proffer these individuals as comparators

11

### 1. John Revelle

Revelle is a sergeant in the HCSO's Mental Health Unit whose employment history reflects six use of-force reports as sergeant from July 2007 to July 2011. The investigations of those incidents concluded that Revelle's actions were consistent with HCSO policy. The one incident in which he was found to have used unjustified force and for which he received a letter of counseling occurred in 2005 when he was a deputy and pertained to improper procedure/use of force when drawing his service weapon during a traffic stop.

Here, Bankhead and Revelle, both sergeants in the mental health unit and employees in the detention bureau, were subject to the same "Use of Force Policy." Bankhead's supervisor at the time of his July 2011 termination was Major Mike Smith. The evidence establishes that all sergeants, including Revelle, reported to Major Smith through the chain of command for some period of time from 2009 to 2011. Revelle's employment history report reflects that his supervisor in 2012 was then-Major Fred Brown. Major Brown was one of the three ADC committee members who subsequently recommended termination of Bankhead's employment. *See Lee*, 574 F.3d at 260-61 (finding evidence that ultimate decisionmaker as to employees' continued employment is same individual, even if

in either his response to the County's plea to the jurisdiction or in his appellee's brief, we do not consider whether these former employees were valid comparators for purposes of determining whether Bankhead has established a prima facie case.

employees do not share immediate supervisor, to be sufficient). The record reflects that Bankhead had eight documented use-of-force incidents and Revelle had six use-of-force incidents in approximately the same three-year period. *See Lee*, 574 F.3d at 261 (noting each employee's track record need not comprise identical number of identical infractions but must instead be comparable).

However, the most critical factor in evaluating comparator evidence is that the plaintiff's conduct that drew the adverse employment action be "nearly identical to that of the proffered comparator who allegedly drew" a dissimilar response. *Lee*, 574 F.3d at 260. The County argues that "Revelle, who committed no policy infractions in the jail, is not a valid comparator to Bankhead, who deliberately struck a defenseless inmate." We agree. Revelle's conduct, for which he received a documented letter of counseling, arose from drawing his service weapon during a traffic stop, an incident resulting in injury to no one. In contrast, the result of Bankhead's use of force against Mastroianni required fourteen sutures above his eye. Moreover, the Revelle incident dates from 2005 when he was still a deputy, whereas Bankhead's incident was during his tenure as sergeant. Because the misconduct of these two men are not of comparable seriousness, Revelle is not a valid comparator. *See AutoZone, Inc.*, 272 S.W.3d at 594; *Monarrez*, 177 S.W.3d at 917.

## 2. Kevin Gaeke

Gaeke, a detention officer at the County jail between July 2009 and November 2011, was involved in thirteen use-of-force incidents, the last of which was classified as a "major" one. An investigation concluded that Gaeke had used unjustified excessive force and been untruthful in violation of HCSO policy, for which he was suspended without pay for ten days and placed on probation for 180 days.

Bankhead argues that Gaeke is a proper comparator because (1) both he and Gaeke reported to Major Smith, (2) both were found to have resorted to unjustifiable force, and (3) two of the majors on the disciplinary panel that suspended Gaeke were also on the panel that recommended terminating Bankhead's employment. However, although he worked in detention, Gaeke was neither a law enforcement officer nor a sergeant or a supervisor. In contrast, Bankhead, a sergeant, was in a supervisory role and was responsible for, among other things, training new employees and setting an example in the jail. Employees who hold different job positions are not similarly situated. *See Grimes v. Wal–Mart Stores Tex., L.L.C.*, 505 F. App'x 376, 379 (5th Cir. 2013) (concluding plaintiff's subordinate, who was also manager, not valid comparator); *see also Crosby v. Computer Sci. Corp.*, 470 F. App'x 307, 309 (5th Cir. 2012) (concluding plaintiff's supervisor not valid comparator); *AutoZone, Inc.*, 272

S.W.3d at 594 (noting employees with different responsibilities are not considered to be 'nearly identical"); *see also Villareal v. Del Mar College*, No. 13–07–00119–CV, 2009 WL 781750, at *8 (Tex. App.—Corpus Christi Mar. 26, 2009, pet. denied) (mem. op.) (noting employees who hold different job positions are not similarly situated). Further, the ADC recommended that Bankhead be terminated for "policy violations, unjustified use of force," and recommended that Gaeke be suspended and placed on probation for "excessive use of force, untruthfulness." *See Okoye*, 245 F.3d at 514 (holding that comparisons to other employees not terminated were inapplicable because other employees violated different workplace rules and thus were not "nearly identical"). Thus, Gaeke, too, is not a valid comparator.

### 3. William Dickerson

Finally, Bankhead argues that he was treated less favorably than Dickerson, whom he alleges is a similarly situated member outside of the protected class. Bankhead contends that Dickerson was involved in fourteen use-of-force incidents in a three-year period yet was neither terminated nor disciplined.

Dickerson was a jail detention officer promoted to sergeant ten months after the January 2011 incident involving Bankhead. Although involved in a number of use-of-force incidents, Dickerson was never found to have used unjustified force or otherwise violated HCSO policy. Thus, Dickerson's conduct cannot be considered

"nearly identical" to Bankhead's conduct in the January 2011 incident. *See Lee*, 574 F.3d at 260 (noting most critical factor in evaluating comparator evidence is that plaintiff's conduct that drew adverse employment action be "nearly identical to that of the proffered comparator who allegedly drew" dissimilar response).

Because Bankhead failed to present sufficient evidence to create a fact issue as to whether similarly situated members outside of the protected class were treated more favorably than him, the trial court lacked subject matter jurisdiction to hear his claim. *See Miranda*, 133 S.W.3d at 226. We sustain the County's first and second issues.[9]

## Conclusion

We reverse the trial court's order denying the County's plea to the jurisdiction, render judgment granting the plea to the jurisdiction, and dismiss the case for lack of subject matter jurisdiction with prejudice.

Jim Sharp
Justice

Panel consists of Justices Higley, Bland, and Sharp.

---

[9] In light of our disposition of these issues, we do not consider Bankhead's cross-appeal.

16