# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
January 4, 2013

Lyle W. Cayce
Clerk

No. 12-50260
Summary Calendar

KARLA GRIMES,

Plaintiff–Appellant

v.

WAL-MART STORES TEXAS, L.L.C.,

Defendant–Appellee

Appeal from the United States District Court
for the Western District of Texas
USDC No. MO-10-CV-067

Before SMITH, PRADO, and HIGGINSON, Circuit Judges.

PER CURIAM:[*]

Plaintiff–Appellant Karla Grimes brought suit against her former employer, Defendant–Appellee Wal-Mart Stores Texas, LLC, alleging defamation and three forms of discrimination arising from her termination. The district court granted summary judgment in Wal-Mart's favor, and Grimes appealed. We affirm.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-50260

## I.

Karla Grimes ("Grimes") began working for Wal-Mart Stores Texas, LLC ("Wal-Mart") in 1986 and received a series of promotions during her twenty-two years with the company. In 2003, Grimes was promoted to Store Manager at an existing Wal-Mart. In 2005, she oversaw the opening of a store at which she became the Store Manager. Then, in November 2008, Grimes was offered a promotion to the position of Market Manager for Southern New Mexico. She declined the promotion, however, because the job would require relocating to a city with services she deemed inadequate for her son, who suffers from a form of cerebral palsy. Grimes alleges that Wal-Mart knew that her child had special needs. She further alleges that Wal-Mart subjected her to heightened scrutiny after she declined the promotion.

Towards the end of January 2009, Grimes met with two superiors to discuss an issue related to how Wal-Mart processes applicants for open positions. Wal-Mart had instructed Grimes's Co-Manager, Olga Guebara, to interview candidates for an open position. Wal-Mart in turn received a set of interview sheets reflecting interviews that had purportedly occurred. However, after further research, Wal-Mart grew concerned that Grimes's store had submitted two interview sheets for interviews that had not actually taken place. Wal-Mart investigated the incident, and Guebara implicated Grimes. She told a supervisor that Grimes had instructed her to reuse past interview sheets without conducting fresh interviews. Grimes denied this allegation, claiming that she had instructed Guebara to conduct the necessary interviews during a brief conversation at the office.

Wal-Mart maintains a four-step, progressive disciplinary system for most infractions. Step three of this system involves a day off from work with possible demotion, while step four is termination. Nevertheless, certain conduct—for instance, "dishonesty/compromised integrity"—is considered "Gross Misconduct"

and can result in immediate termination.  At the conclusion of the investigation into the interview sheet incident, Grimes was informed that she would be demoted to Assistant Manager and would be given the accompanying day off to consider what Wal-Mart viewed as a failure to ensure the integrity of Wal-Mart's internal personnel system, called the Career Preference System.  Guebara received a similar punishment.  That is, while Wal-Mart deemed both employees guilty of "Gross Misconduct," it nevertheless opted for step-three discipline under the progressive system.

Around the same time that Grimes received her punishment for the interview sheet incident, an hourly employee at Grimes's store contacted a supervisor to report a suspected job code discrepancy.  The employee claimed that her pay grade was not appropriately coded given her job responsibilities.  An audit of the store revealed that multiple employees had been improperly coded, resulting in both under- and over-payment.  Wal-Mart informed Grimes of these discrepancies during a series of meetings that took place under Wal-Mart's "open door" policy for communicating with supervisors.  On February 12, 2009, Grimes was informed that she was being terminated as a result of this second incident.  Guebara was also fired.

In response, Grimes filed a lawsuit alleging sex discrimination, retaliation in violation of Title VII, associational discrimination, and defamation.  The district court granted summary judgment in Wal-Mart's favor.  Grimes appealed the district court's judgment on her sex discrimination and associational discrimination claims, as well as the district court's exclusion of expert testimony put forth by Grimes.

## II.

"We review a grant of summary judgment de novo, applying the same standard as the district court." *Ibarra v. United Parcel Serv.*, 695 F.3d 354, 355 (5th Cir. 2012).  Summary judgment is appropriate if "there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, a party asserting "that a fact cannot be or is genuinely disputed" must support such an assertion by citing specific parts of the record. Fed. R. Civ. P. 56(c)(1).

Exclusion of expert testimony falls within the discretion of the trial court. *Muñoz v. Orr*, 200 F.3d 291, 300 (5th Cir. 2000). As such, "we review it only for an abuse of discretion which amounts to manifest error." *Id.* Manifest error is plain and indisputable, and amounts to a complete disregard of controlling law. *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004).

## III.

## A.

Grimes appeals the district court's grant of summary judgment on her sex discrimination and associational discrimination claims. Namely, Grimes claims that she was terminated either because of her sex or because of her son's disability. Discrimination can be proven using direct or circumstantial evidence. *Nasti v. CIBA Specialty Chems. Corp.*, 492 F.3d 589, 593 (5th Cir. 2007). Proving discriminatory termination using circumstantial evidence, as Grimes attempts to do here, requires use of the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

The burden-shifting framework for proving discrimination proceeds in three steps. First, the Plaintiff must establish a prima facie case of discrimination. *Id.* If the Plaintiff makes a prima facie showing, it becomes the employer's burden to articulate a legitimate, nondiscriminatory reason for terminating the Plaintiff. *Id.* Once the employer puts forth a nondiscriminatory

reason, the Plaintiff must show that the employer's proffered reason is merely pretext for discrimination. *Id.*

Making a prima facie case of sex discrimination requires that the Plaintiff show the following: (1) that she belongs to a protected class, (2) that she was qualified for the position, (3) that she suffered an adverse employment action, and (4) that she was replaced with a similarly qualified person who was not a member of the protected class or that similarly situated employees were treated more favorably. *Id.* Here, Grimes has failed to make a prima facie showing. Grimes cannot make a prima facie showing of sex discrimination for two reasons. First, she cannot show that she was replaced by a person who was not a member of her protected class because Wal-Mart replaced Grimes with another female. Second, Grimes has not shown that similarly situated employees were treated more favorably because the only male employee subjected to discipline that she discusses was not similarly situated. That employee, Roger Morvan, was a Co-Manager, which is a position that is subordinate to Grimes's position of Store Manager. Furthermore, Morvan only committed a single infraction related to the Career Preference System. For that violation, he received the same step-three treatment as Grimes. Grimes, however, committed a further violation and was punished accordingly. She has not even suggested that Morvan committed a second offense, let alone one similar to that which Grimes committed. As such, Grimes cannot make a prima facie showing of sex discrimination.

A prima facie case of associational discrimination would require that the Plaintiff show (1) her qualification for the job, (2) an adverse employment action, (3) the employer's knowledge of the employee's disabled relative, and (4) that the adverse employment action occurred under circumstances raising a reasonable inference that the relative's disability was a determining factor in the employer's

No. 12-50260

adverse action.[1]  Grimes cannot make a prima facie showing of associational discrimination because she has presented no evidence to suggest that her son's disability was a determining factor in her termination.  While Wal-Mart arguably was aware of her son's disability, Grimes has not identified any evidence to connect knowledge of her son's disability to her subsequent termination.  While it is true that Grimes declined her promotion explicitly because of her son's needs, nothing occurred thereafter that raises a reasonable inference that her son's disability was a determining factor in her termination.  Therefore, Grimes has failed to make a prima facie showing of associational discrimination as well.

To show pretext, the Plaintiff must establish either that the employer's nondiscriminatory reason is untrue or, while true, is only one of the reasons for the adverse action taken—the other reason being the Plaintiff's protected characteristic.  *Vaughn v. Woodforest Bank*, 665 F.3d 632, 636 (5th Cir. 2011). It is not enough, however, to merely cast doubt on whether the employer had just

---

[1] The Fifth Circuit has not explicitly recognized a cause of action for discrimination based on association with a handicapped individual, nor have we described what such a claim requires.  This Court referenced an associational discrimination claim based on disability in an unpublished opinion. *Carter v. Ridge*, 255 Fed. App'x 826, 833 (5th Cir. 2007) (per curiam) (unpublished).  However, that opinion affirmed dismissal of the associational discrimination claim on exhaustion grounds. *Id.*  Likewise, judgment as a matter of law was affirmed in *Rogers v. International Marine Terminals, Inc.*, 87 F.3d 755 (5th Cir. 1996), without explaining what an associational discrimination claim entails.  87 F.3d at 760–61.  In *Deffenbaugh-Williams v. Wal-Mart Stores, Inc.*, 156 F.3d 581, 588–89 (5th Cir. 1998), *partially vacated on other grounds sub nom.*, *Williams v. Wal-Mart Stores, Inc.*, 182 F.3d 333 (5th Cir. 1999) (en banc) (per curiam), the Court recognized an associational discrimination claim based on an interracial relationship, but the Court did not elucidate the elements required to make a prima facie showing.

District courts within this Circuit have, however, recognized a cause of action for associational discrimination. *See, e.g.*, *Spinks v. Trugreen Landcare, LLC*, 322 F. Supp. 2d 784, 796 (S.D. Tex. 2004); *Moresi v. AMR Corp.*, No. CA 3:98–CV–1518–R, 1999 WL 680210, at *2–*3 (N.D. Tex. Aug. 31, 1999).  It is the test laid out in these cases that the Court cites here. *See Moresi*, 1999 WL 680210, at *3.  However, this opinion should not be construed as recognizing a cause of action for associational discrimination based on disability since, even assuming such a cause exists, Grimes cannot meet the burden that such a claim would entail.

cause; the Plaintiff must affirmatively show that the employer's proffered reason is unworthy of credence. *Moore v. Eli Lilly & Co.*, 990 F.2d 812, 815–16 (5th Cir. 1993). Since Wal-Mart has proffered a nondiscriminatory reason for terminating Grimes—two incidents involving the integrity of the Career Preference System—it would be Grimes's obligation to show pretext, assuming *arguendo* she can make a prima facie showing.

Here, Grimes explicitly relies on the same evidence of pretext for both of her discrimination claims. The Court will thus address both claims together in examining Grimes's pretext theories. As explained below, even assuming *arguendo* that Grimes can make a prima facie showing of discrimination, she has not offered sufficient evidence to create a genuine issue of material fact regarding pretext. Grimes has presented no affirmative evidence suggesting Wal-Mart terminated her for discriminatory reasons, and her attempts to undermine Wal-Mart's proffered reasons fall short. Instead of showing why Wal-Mart's reasons are unworthy of credence, Grimes merely attempts to cast doubt on whether Wal-Mart had just cause to terminate her. *See Moore*, 990 F.2d at 815–16. There being no genuine dispute of material fact, Wal-Mart is entitled to judgment as a matter of law. Accordingly, the Court will affirm.

Grimes first argues that Wal-Mart's reasons for terminating her are pretext because Wal-Mart gave inconsistent reasons for her termination. She claims that the job code issue for which she was ultimately fired was not mentioned during her exit interview or during a hearing before the Texas Workforce Commission. *Id.* However, Grimes's argument is not supported by the record. Wal-Mart uses a software suite called the Career Preference System for a variety of personnel-related purposes. Wal-Mart uses the system to track hiring for specific positions and to code employees for pay purposes based on their specific job level. Grimes's argument relies on conflating her two distinct disciplinary incidents in hopes of creating a sense of ambiguity. She focuses on

the fact that Wal-Mart frequently described her transgressions broadly as "integrity issues involving the Career Preference System," and thereby concludes that Wal-Mart has given inconsistent reasons for her termination since they did not specifically mention the job coding issue.   However, "integrity issues involving the Career Preference System" clearly encapsulates both the interview sheets incident as well as the job coding problem, since both transgressions violated the integrity of the Career Preference System.  Therefore, contrary to Grimes's claims, Wal-Mart has not given inconsistent reasons as to why it terminated Grimes.

Grimes also contends that Wal-Mart has no evidence she was aware of the interview sheet incident or the job coding discrepancies, and that this means her termination was pretextual. Wal-Mart, however, was not required to definitively prove that Grimes directed the incidents that led to her termination.  Indeed, this argument completely disregards this Court's admonition that discrimination plaintiffs must "do more than cast doubt on whether the employer had just cause for its decision." *Moore*, 990 F.2d at 815 (internal quotation marks and brackets omitted).  Grimes was charged with overseeing an entire store as Store Manager. It was her obligation to comply with company policies and ensure her subordinates did the same.  It was thus sufficient for Wal-Mart to accumulate inculpatory evidence through an investigation and to fire Grimes given her supervisory role at this particular store.  Statements from co-workers directly implicated Grimes and inconsistencies in her version of events further undermined her credibility.  This evidence strengthens Wal-Mart's claim that its termination of Grimes was not pretext for discrimination.

Grimes's argument regarding contemporaneous evidence of job code violations also fails.  Grimes claims that Wal-Mart lacked evidence of job code violations when it fired her, but then expressly concedes that Wal-Mart in fact had evidence that at least three employees had been improperly coded.  Grimes

8

was responsible for enforcing company policies, procedures, and regulations, as well as ensuring that subordinate employees complied with the company's policies. Wal-Mart uncovered contemporaneous evidence that Grimes had failed to comply with company directives regarding interviews and that Grimes oversaw job coding discrepancies. Rather than showing pretext, this evidence further underscores the legitimacy of Wal-Mart's nondiscriminatory reasons for firing Grimes.

Grimes also claims that a supervisor was not objective in his investigation of her misconduct because he failed to mention an exculpatory statement submitted by a co-worker. This argument fails for two reasons. First, it is difficult to conclude that Wal-Mart's investigation of Grimes was biased merely because a specific statement by an employee was not included in a summary of the investigation. A summary is just that: a concise overview. It would defeat the purpose of a summary if the author was required to include every possible detail. Second, the statement relied upon by Grimes is not as exculpatory as she hopes. While the employee, Christy Rodriguez, claimed to have heard Grimes instructing Guebara to conduct the interviews required by Wal-Mart—as Grimes asserts—Rodriguez's statement also made clear that the conversation between Grimes and Guebara lasted over thirteen minutes, not the fifteen seconds Grimes previously claimed. It was also clear to Wal-Mart that Grimes was in the room when Guebara retrieved the interview sheets that were ultimately resubmitted in lieu of conducting fresh interviews. Grimes has thus failed to identify any aspect of the investigation that creates an issue of fact as to her supervisor's objectivity.

Grimes's final two assertions are similarly unavailing. Grimes claims that her offenses were trivial and thus not deserving of termination, and yet Grimes herself conceded that she "understand[s] the seriousness of the Career Preference Procedures." This admission attests to the gravity of Grimes's

infractions and strengthens Wal-Mart's case for termination. The same is true regarding the claim that Wal-Mart failed to follow its own disciplinary policy when it elected to terminate Grimes. As with her claim concerning inconsistent reasons, Grimes attempts to conflate her disciplinary infractions in hopes of creating ambiguity. She argues that Wal-Mart effectively skipped step three of the disciplinary procedure when it fired her. However, the record clearly shows that Grimes was disciplined two separate times for two separate incidents, and that the punishments Grimes received matched steps three and four of Wal-Mart's four-step policy, respectively. Moreover, Grimes's exit paperwork indicates that Grimes was terminated for "Gross Misconduct." Conduct of such severity falls outside of Wal-Mart's progressive discipline system. That is, Wal-Mart was not required to follow the four-step discipline system at all given the nature of Grimes's conduct. These arguments thus cannot create an issue of material fact regarding pretext.

As explained above, Grimes has presented insufficient evidence to suggest that the nondiscriminatory reasons for her termination put forth by Wal-Mart constitute pretext. At best, Grimes has disputed that Wal-Mart had just cause to fire her. As this Court's precedent clearly shows, more is needed. Grimes must present enough evidence for a reasonable factfinder to conclude that the reasons offered by Wal-Mart are either untrue, or, if true, only part of the reason for her termination. She has failed to do so. Therefore, summary judgment was appropriate.

## B.

Grimes also appeals the district court's exclusion of an expert witness that Grimes would have called at trial. Because we affirm summary judgment, this claim is denied as moot.

## IV. CONCLUSION

For the foregoing reasons, the district court's judgment is AFFIRMED.