# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 18-50291

United States Court of Appeals
Fifth Circuit

**FILED**
November 3, 2020

Lyle W. Cayce
Clerk

JOHN BESSER,

      Plaintiff - Appellant

v.

TEXAS GENERAL LAND OFFICE; COMMISSIONER GEORGE
PRESCOTT BUSH, in his official capacity; KELLY L. MCBRIDE, in her
individual capacity; ANNE IDSAL; KALANI HAWKS,

      Defendants - Appellees

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:17-CV-1010

Before OWEN, Chief Judge, and WIENER and DENNIS, Circuit Judges.

PER CURIAM:*

John Besser, a former employee of the Texas General Land Office (GLO), sued the GLO and various individuals under the Family & Medical Leave Act and the Americans With Disabilities Act, alleging discrimination and retaliation when he used leave to care for his infirm husband. The district

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

court dismissed the claims for failure to state a cause of action.  We affirm the district court's judgment.

## I

We set forth the facts as alleged in the complaint and accept them as true, as we are required to do at the motion-to-dismiss stage.[1]  In March 2016, John Besser began working with the Texas General Land Office (GLO) as a contract manager.  Kelly McBride was the director of the Contracts Department at the GLO, which meant that she coordinated all trainings and approved all leave time within the department.  McBride supervised the team leader and contract managers on Besser's team.  In May 2016, McBride asked Besser to join a team with responsibility for contracts related to the preservation and maintenance of the Alamo.  Besser's new team consisted of three contract managers and Kerry Danieli, the "Team Lead."  On June 13, 2016, Besser's husband, Gregg Dodson, suffered a heart attack.  Dodson was taken to the ER and the ICU.  Besser texted McBride to let her know what had happened and that he would need to be away from work for the rest of the week because of the medical emergency.  At the time of Dodson's heart attack, Besser had worked for the state of Texas for at least a year and had worked for more than 1,250 hours during the past year, making him eligible for Family & Medical Leave Act (FMLA) leave.

On June 29, Dodson's cardiologist certified Besser's need for FMLA leave to care for his husband.  He certified the duration of the condition as "chronic," he retroactively stated that Dodson would be incapacitated through June 24, and said that Dodson would need rehabilitation therapy for 12 weeks, as well as follow-up evaluations every 3-6 months thereafter.  Besser intended to assist with Dodson's care.  Dodson's diagnosed heart conditions qualified as a serious

---

[1] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

health condition under the FMLA as well as a disability under the Americans With Disabilities Act (ADA).

During the week of June 20, Besser arrived at work late so that he could provide caregiver services to Dodson in the mornings. On June 24, Danieli said to Besser that "it must be nice to come in late." When Besser explained that the situation was serious because his husband had suffered a heart attack, "Danieli became defensive and claimed she was only joking." Besser reported this interaction to McBride.

On July 1, 2016, a "skeleton crew" was scheduled to work at the GLO. "Skeleton crew" refers to having minimal operational staff working on a given day due to the day's proximity to a major holiday. McBride had told her employees that if they did not work the first skeleton day of the year, just before Memorial Day, they should "feel obligated" to work the second skeleton day on July 1, although it was not a requirement. Besser had anticipated working on July 1, but because he had to be home to care for Dodson, he was no longer available to work. On June 30, Besser told Danieli he would not be able to work the following day. She "rolled her eyes and asked him how long he was going to 'milk this' situation." Besser again reported this incident to McBride.

In mid-July, Besser emailed McBride asking to use annual leave to take off August 12, and August 15, 2016. Besser wished to be present at home when Dodson had family members visiting on those days. McBride approved his request. When Besser updated the group calendar to show the dates he would be away, Danieli came into Besser's office and berated him. She said that Besser was "always off," that his "priority should be the GLO," and that Besser was "taking advantage" of his husband's illness. Other employees were able to hear Danieli yelling at Besser. Besser asked Danieli to leave his office. When she would not, he said he would leave instead, which Danieli said she would

consider an act of insubordination. When a few other employees came by to see what was happening, Danieli left Besser's office. After this incident, Besser texted McBride telling her what had transpired and advising that he intended to report Danieli to the Human Resources Department (HR). McBride texted back, asking Besser not to report Danieli because she would be fired if he did. Besser did not report the altercation, but another staff member who overheard Danieli did report the incident to HR. Over the next two days, Besser spoke with two members of HR to discuss Danieli. Several days later, McBride brought the three contract managers into a conference room to let them know that Danieli was no longer working at the GLO. McBride "went on her own tirade," expressing how upset she was that Danieli was gone and "slamming her fist on the table in anger at one point." McBride told them that if she heard any of them talking about Danieli's departure from the GLO, they would be fired.

After the meeting, McBride "made the work environment especially stressful," acting in an "unprofessional, cold, curt" manner. All three contract managers found the work environment unpleasant and discussed among themselves the prospect of looking for other jobs.

In August, the contract managers were told that Lance White would become their new team leader. Shortly after White started, he asked Besser why one of the contract managers had texted White to tell him that she would be a few minutes late to work. Besser explained that the contract managers had been "walking on eggshells" since the investigation and Danieli's departure, and the other contract manager was likely "just making sure she protected her job." White apparently told McBride about the conversation because two days later, "McBride entered Besser's office, closed the door, and went into another tirade, with a side of paranoia," suggesting that Besser had discussed her with other employees. Besser told her that he did not know what

she was referring to. Besser then told McBride that the stressful work environment had started when Danieli was dismissed, at which point, "McBride very much lost her temper" and accused Besser of reporting Danieli's behavior and causing her termination. Before McBride left Besser's office, she told him that he had crossed a line and he had better "watch [him]self."

In September, one of the other two contract managers on the team gave notice that she would be leaving the GLO. Shortly thereafter, McBride met with the remaining staff members and told them that the other contract manager had also resigned. Once the meeting was over, McBride asked Besser and White to stay behind. McBride then went into another "tirade" about Besser, accusing him of causing the other two contract managers to leave. She also said that Besser had "messed everything up," he was disloyal to the agency, and she "didn't know if she could work with him anymore." The next day, Besser filed a complaint with HR against McBride. Three days after that, Besser met with someone from HR to discuss the complaint. They discussed transfer options to resolve the issue. The following day, Besser met with the GLO Ombudsman to explain what had happened. The Ombudsman said he would look into it and get back to Besser, which he never did. About a week later, Besser again met with a member of HR, who had determined that Besser had not been subjected to a hostile working environment. On November 4, 2016, Kilani Hawks, the HR director, delivered a termination letter to Besser. Hawks verbally cited to discord between McBride and Besser as the reason for the termination.

Besser timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) and it eventually issued a Notice of Right to Sue. Besser sued in the United States District Court for the Western District of Texas, alleging violations of the FMLA and the ADA. Besser initially sued the GLO, George Prescott, head of the GLO, and McBride.

Besser later added Hawks and Anne Idsal, the Chief Clerk of the GLO, as defendants in his amended complaint. Defendants filed a motion to dismiss, which the district court granted. The district court held that Besser "fail[ed] to allege facts showing a causal relationship between activities protected by the FMLA and ADA and his termination," and therefore Besser had failed to state a claim upon which relief could be granted.[2] Besser appeals.

## II

We review a district court's grant of a motion to dismiss de novo, applying the same standard on review as that applied by the district court.[3] In order to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."[4] A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level."[5] Although we are bound to accept plaintiff's factual allegations as true, "we do not credit conclusory allegations or allegations that merely restate the legal elements of a claim."[6] A plaintiff is not entitled to relief when "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct."[7] Employment discrimination cases do not call for a heightened pleading standard.[8]

As an initial matter, Besser argues that the district court erred when it required him to establish or "prove" a prima facie case to defeat the GLO's 12(b)(6) motion. While Besser is correct that an employment discrimination plaintiff "need not plead a prima facie case of discrimination" in order to

---

[2] *Besser v. Tex. Gen. Land Off.*, No. A-17-CV-1010-SS, 2018 WL 1353936, at *6 (W.D. Tex. Mar. 15, 2018).

[3] *See Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009).

[4] *Twombly*, 550 U.S. at 570.

[5] *Id.* at 555.

[6] *Chhim v. Univ. of Tex.*, 836 F.3d 467, 469 (5th Cir. 2016) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

[7] *Iqbal*, 556 U.S. at 679.

[8] *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512, 514-15 (2002).

survive a motion to dismiss,[9] we have held that a plaintiff still must "plead sufficient facts on all of the ultimate elements of a disparate treatment claim to make his case plausible."[10] Accordingly, we have reasoned that "[t]he prima facie standard nonetheless has some relevance at the motion-to-dismiss stage."[11] The district court used the correct legal standard for a motion to dismiss. Moreover, the district court did not hold that Besser had not *proved* each element of a prima facie case of discrimination, rather it used the language of a prima facie case as a framing device to determine whether Besser had sufficiently alleged facts to support the ultimate elements of each claim. The district court's references to a prima facie case were appropriate.

## III

Besser argues that the district court erred when it dismissed his FMLA retaliation claim. The FMLA entitles an eligible employee to twelve weeks of leave during any twelve-month period "[i]n order to care for the spouse . . . if such spouse . . . has a serious health condition."[12] Further, the FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the FMLA]."[13] An employer also may not "discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by [the FMLA]."[14] Retaliation claims under the FMLA without direct evidence of discrimination

---

[9] *Id.* at 515; *see also Raj v. La. State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013) ("Inasmuch as the district court required [the appellant] to make a showing of each prong of the prima facie test for disparate treatment at the pleading stage, the district court erred by improperly substituting an 'evidentiary standard' for a 'pleading requirement.'").

[10] *Chhim*, 836 F.3d at 470.

[11] *Jenkins v. La. Workforce Comm'n*, 713 F. App'x 242, 244 (5th Cir. 2017) (per curiam) (citing *Chhim*, 836 F.3d at 470).

[12] 29 U.S.C. § 2612(a)(1)(C).

[13] *Id.* § 2615(a)(1).

[14] *Id.* § 2615(a)(2).

No. 18-50291

are analyzed under the *McDonnell Douglas* burden-shifting framework.[15]  As we have noted, an employment discrimination plaintiff does not need to plead a prima facie case of discrimination, but we have said that "this court may consider the *McDonnell Douglas* framework, and no plaintiff is exempt from [his] obligation to 'allege facts sufficient to state all the elements of [his] claim.'"[16]  An employee may show a prima facie case by establishing: "(1) [he] engaged in protected activity; (2) the employer took a materially adverse action against [him]; and (3) a causal link exists between [his] protected activity and the adverse action."[17]  The employee "does not have to show that the protected activity is the only cause of [his] termination," however he is "required to show that the protected activity and the adverse employment action are not completely unrelated."[18]

## A

Besser claims that he was entitled to FMLA protection because he took FMLA leave, complained about Danieli's hostility toward his use of FMLA leave, and he filed a complaint against McBride.

We agree with the district court that "[Besser] sufficiently pleads he was entitled to FMLA leave to survive a motion to dismiss as he alleges he took leave on four occasions in the summer of 2016 to care for his spouse, who had a serious health condition" and therefore engaged in protected activity.[19]  In his complaint, Besser states that Dodson's cardiologist certified Besser's need for FMLA leave to care for his husband.  Besser's most recent use of leave was

---

[15] *Wheat v. Fla. Par. Juv. Just. Comm'n*, 811 F.3d 702, 705 (5th Cir. 2016) (citing *Chaffin v. John H. Carter Co.*, 179 F.3d 316, 319 (5th Cir. 1999)).

[16] *Puente v. Ridge*, 324 F. App'x, 423, 427-28 (5th Cir. 2009) (unpublished) (quoting *Mitchell v. Crescent River Port Pilots Ass'n*, 265 F. App'x 363, 370 (5th Cir. 2008) (per curiam)).

[17] *Wheat*, 811 F.3d at 705.

[18] *Mauder v. Metro. Transit Auth.*, 446 F.3d 574, 583 (5th Cir. 2006).

[19] *Besser v. Tex. Gen. Land Off.*, No. A-17-CV-1010-SS, 2018 WL 1353936, at *4 (W.D. Tex. Mar. 15, 2018).

on August 15, 2016 when he took a day off to help care for Dodson. Although defendants argued below that Besser's latter two absences were not entitled to FMLA protection, we agree with the district court that "[w]hether each of [Besser's] absences qualifies as protected FMLA leave is a fact issue better addressed by a motion for summary judgment or at trial."[20] Accordingly, we treat all four instances of leave as protected activity.

Besser argues that his responses to Danieli's comments constituted FMLA-protected activity, as did his complaint against McBride "based on her pervasive abuse and threats of termination occasioned by her belief [Besser] turned in Danieli, caused Danieli to be fired, and 'messed everything up.'" We disagree. "The FMLA bars an employer only from retaliating against an employee for engaging in conduct[] protected by the Act."[21] Complaints about an employer's actions that are not unlawful under the FMLA cannot form the basis of a retaliation claim.[22]

This court has held that "comments are evidence of discrimination only if they are '1) related to the protected class of persons of which the plaintiff is a member; 2) proximate in time to the complained-of adverse employment decision; 3) made by an individual with authority over the employment decision at issue; and 4) related to the employment decision at issue.'"[23] Comments by co-workers may also be circumstantial evidence of discrimination when they "demonstrate discriminatory animus and . . . [are] made by a person primarily responsible for the adverse employment action or

---

[20] *Id.* at *4 n.2.

[21] *Harrelson v. Lufkin Indus., Inc.*, 614 F. App'x 761, 764 (5th Cir. 2015) (per curiam) (citing 29 U.S.C. § 2615(a)).

[22] *Id.*

[23] *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 380 (5th Cir. 2010) (quoting *Rubinstein v. Adm'rs of Tulane Educ. Fund*, 218 F.3d 392, 400-01 (5th Cir.2000)); *see also Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 475 (5th Cir. 2015).

by a person with influence or leverage over the formal decisionmaker."[24] Besser has not alleged that Danieli had any authority over the decision to terminate him or that Danieli had influence or leverage over anyone with the power to terminate Besser. At the time that Besser was terminated, Danieli was no longer employed by the GLO. Further, the complaint did not suggest any conversations or communication between Danieli and McBride or anyone in HR that would be indicative of leverage or influence over Besser's termination. Because Danieli's comments were not evidence of discrimination under the FMLA, Besser's opposition to those comments cannot be considered FMLA-protected activity.

Besser cites to this court's decision in *Zamora v. City of Houston*, arguing that a "cat's paw theory" should apply here.[25] Under a cat's paw theory, the "plaintiff must establish that the person with a retaliatory motive somehow influenced the decisionmaker to take the retaliatory action."[26] In other words, "a plaintiff must show that the person with retaliatory animus used the decisionmaker to bring about the intended retaliatory action."[27] Besser has not alleged facts suggesting that Danieli had any influence over McBride or HR's decision to terminate Besser. Furthermore, Danieli was no longer employed by the GLO by the time Besser was terminated. The cat's paw theory does not apply. In any event, Besser has forfeited this argument by failing to present it to the district court.[28]

Nor has Besser alleged that McBride harbored any animus towards his exercise of his FMLA rights. Although Besser was fired shortly after he

---

[24] *Laxton v. Gap Inc.*, 333 F.3d 572, 583 (5th Cir. 2003) (first citing *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 225 (5th Cir. 2000); and then citing *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 899 (5th Cir. 2002)).

[25] 798 F.3d 326, 331 (5th Cir. 2015).

[26] *Id.*

[27] *Id.*

[28] *Kirschbaum v. Reliant Energy, Inc.*, 526 F.3d 243, 257 n.15 (5th Cir. 1997).

complained about McBride's behavior, McBride's behavior was not related to Besser's use of FMLA leave.  By Besser's own account, McBride was angry about Danieli's termination and Besser's decision to discuss her termination despite McBride's instruction not to do so.  Besser also contacted McBride on several occasions about his use of leave, and he does not allege that she expressed any frustration or animus when he requested time off.  Besser has failed to allege sufficiently that McBride engaged in any activity that was unlawful under the FMLA, and therefore his complaint against her was not protected activity.  Besser's protected activity is limited to his four uses of leave.

## B

We agree with the district court that the GLO took a materially adverse action against Besser when it terminated his employment, and that Besser did not allege that he suffered any other adverse employment action.

## C

Finally, Besser argues that the temporal proximity of his FMLA leave and his termination shows a causal link sufficient to survive a motion to dismiss.  "When evaluating whether the adverse employment action was causally related to the FMLA protection, the court shall consider the 'temporal proximity' between the FMLA leave, and the termination."[29]  The Supreme Court has acknowledged that when the temporal proximity is "very close," proximity alone suffices to establish causation in a prima facie case of retaliation.[30]

Accepting as true that Besser last took FMLA leave on August 15, 2016, he was terminated approximately two-and-a-half months later on November 4,

---

[29] *Mauder v. Metro. Transit Auth.*, 446 F.3d 574, 583 (5th Cir. 2006).
[30] *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001).

11

2016. The district court held that "the temporal proximity is not close enough to establish a causal link by itself."[31] The district court based its holding on *Amsel v. Texas Water Development Board*, in which we held in an unpublished opinion that a two-and-a-half-month gap between the plaintiff's use of leave and his dismissal "is not, by itself, enough to show a causal connection based upon temporal proximity alone,"[32] as well as a district court case with a similar holding.[33]

There is some tension among unpublished decisions of our court as to when temporal proximity, standing alone, is sufficient to allow an inference of causation at summary judgment.[34] In *Evans v. City of Houston*, this court noted that "a time lapse of up to four months has been found sufficient to satisfy the causal connection for summary judgment purposes."[35] However, we cited only two district court decisions,[36] and the time period at issue in Evans was five days.[37] That is not binding, or even persuasive, precedent that two and one-half months is sufficient.

The United States Supreme Court has favorably cited a decision holding that three months is not within the "very close" requirement.[38] We conclude that two and one-half months between the protected activity and the adverse

---

[31] *Besser v. Tex. Gen. Land Off.*, No. A-17-CV-1010-SS, 2018 WL 1353936, at *5 (W.D. Tex. Mar. 15, 2018).

[32] *Amsel v. Tex. Water Dev. Bd.*, 464 F. App'x 395, 401-02 (5th Cir. 2012) (per curiam).

[33] *Potts v. United Parcel Serv.*, No. 3:11-CV-2407-L, 2013 WL 4483080, at *13-14 (N.D. Tex. Aug. 22, 2013).

[34] *See Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 948-49 (5th Cir. 2015) (acknowledging that "this court has accepted a two-and-a-half-month gap as sufficiently close in one case, and rejected nearly the same timeframe in another").

[35] 246 F.3d 344, 354 (5th Cir. 2001) (quoting *Weeks v. NationsBank, N.A.*, No. CIV.A. 3:98-CV-1352M, 2000 WL 341257, at *3 (N.D. Tex. Mar. 30, 2000)).

[36] *Id.* (first citing *Weeks*, 2000 WL 341257, at *3; and then citing *Garrett v. Constar, Inc.*, No. CIV.A. 397-CV-2575, 1999 WL 354239, at *3 (N.D. Tex. May 25, 1999)).

[37] *Id.*

[38] *See Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001) (citing *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997) (concluding that a three-month period was insufficient)).

employment decision, standing alone, is not within the "very close" proximity that is necessary to establish causation.

Besser also argues that Danieli's "improper comments" about his use of leave and McBride's animosity support an inference that he was terminated for exercising his FMLA-protected rights, explaining that he "alleged facts plausibly describing a causal link between his termination . . . , his objection to Danieli's behavior, and McBride's systematic pattern of animus and retaliation after Danieli was fired." The district court held these facts insufficient to support an inference of causation. We agree. As we have already noted, Besser has not alleged that Danieli had any authority over the decision to fire him, or that she had any influence over those who did have that power. Therefore, her comments alone cannot provide the causal link between Besser's use of FMLA leave and his termination.

Besser's argument that McBride's behavior towards him provides a causal link similarly fails. Besser has not sufficiently pled that McBride's animosity was directed towards his use of leave. When Besser contacted McBride about taking leave, he does not allege that she expressed displeasure. Nor does he contend that McBride specifically mentioned his use of leave. As the district court noted, the complaint suggests that McBride treated all three contract managers equally badly, even insinuating that McBride's behavior caused the other two contract managers to leave the GLO. Nothing in the complaint suggests that the other contract managers used FMLA leave, so Besser was treated the same as employees who had not used or requested FMLA leave. It was only after Besser spoke with White that McBride targeted him, but Besser does not allege that her anger at that point was related to his use of leave. At a later meeting McBride accused Besser of causing the other two contract managers to leave, but never mentioned his use of leave.

13

Accordingly, Besser has not shown an additional causal link between his use of FMLA leave and his termination.

The dissenting opinion contends that 29 U.S.C. § 2615(a)(2) "should be read to protect not only an employee's opposition to actual violations of the law, but also opposition to conduct that the employee reasonably and in good faith perceives as violating the FMLA."[39]  We do not address that question because Besser's brief in this court does not raise it.  Despite the dissenting opinion's assertion to the contrary, Besser did not contend that the FMLA protects his opposition to conduct that he had a reasonable and good-faith belief violated the FMLA.

## IV

Besser also alleges that the district court erred when it dismissed his ADA discrimination and retaliation claim.  The ADA prohibits an employer from "excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association."[40]

## A

Besser alleges that he was terminated due to his association with a person with a disability.  This court has not "explicitly recognized a cause of action for discrimination based on association with a handicapped individual."[41]  However, we have said that "[i]f such an action were viable," to establish a prima facie case the plaintiff would have to show: "(1) [his] qualification for the job, (2) an adverse employment action, (3) the employer's knowledge of the employee's disabled relative, and (4) that the adverse

---

[39] *Post* at 18.

[40] 42 U.S.C. § 12112(b)(4).

[41] *Spencer v. FEI, Inc.*, 725 F. App'x 263, 267 (5th Cir. 2018) (per curiam) (quoting *Grimes v. Wal-Mart Stores Tex., L.L.C.*, 505 F. App'x 376, 380 n.1 (5th Cir. 2013) (per curiam)).

employment action occurred under circumstances raising a reasonable inference that the relative's disability was a determining factor in the employer's adverse action."[42]  Regardless of whether we would recognize such a claim, we agree with the district court that Besser has not adequately pled facts sufficient to support the fourth requirement.  Accepting Besser's version of events, Danieli became frustrated with his use of leave and acted accordingly.  After Danieli was fired, McBride expressed her displeasure with Besser's role in Danieli's termination as well as anger that he discussed Danieli with White when she had explicitly asked him not to.  She also accused him of causing the other two contract managers to leave the GLO.  Besser's complaint does not contain any facts that allow a reasonable inference that *Dodson's disability* was a determining factor in Besser's termination.  In fact, according to Besser's account, Dodson's disability was only mentioned twice: once when he texted McBride to let her know about Dodson's heart attack, and again when Danieli mentioned that Besser was "taking advantage" of Dodson's illness.  At no point does Besser suggest that Danieli, McBride, or anyone else at the GLO expressed animosity regarding Dodson's condition, or that it played any role in the decision to terminate him.

## B

Alternatively, Besser alleges that the GLO retaliated against him for making "protected complaints about disability association discrimination and retaliation by Danieli, or due to McBride's perception that he had made complaints about disability association discrimination and retaliation by Danieli."  Retaliation under the ADA requires that an employee show: (1) he engaged in protected activity, (2) an adverse employment action occurred, and (3) a causal link exists between the protected activity and the adverse

---

[42] *Id.* (quoting *Grimes*, 505 F. App'x at 380).

employment action.[43]  In this case, Besser did not engage in protected activity. Here, protected activity includes "oppos[ing] any act or practice made unlawful by [the ADA]."[44]  To satisfy this requirement, Besser must show that he had a "reasonable belief that the employer was engaged in unlawful employment practices"[45] under the ADA.[46]  In other words, Besser would need to show that he reasonably believed that someone at the GLO engaged in activity that was "unlawful *under the ADA* in order to have engaged in a 'protected' activity."[47] Besser did not sufficiently plead facts to suggest that anyone at the GLO was engaged in unlawful conduct under the ADA.

As we already noted, Besser has not sufficiently alleged illegal associational discrimination by Danieli or anyone at the GLO.  In addition, under the ADA,

> an employer need not provide the applicant or employee without a disability with a reasonable accommodation because that duty only applies to qualified applicants or employees with disabilities.  Thus, for example, an employee would not be entitled to a modified work schedule as an accommodation to enable the employee to care for a spouse with a disability.[48]

As the Third Circuit has noted, "there is a material distinction between firing an employee because of a relative's disability and firing an employee because of the need to take time off to care for the relative."[49]  Accepting Besser's allegations as true, he complained of Danieli's criticism of his use of

---

[43] *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 348 (5th Cir. 2007).

[44] *St. John v. Sirius Sols., LLLP*, 299 F. App'x 308, 309 (5th Cir. 2008) (per curiam) (citing 42 U.S.C. § 12203(a)).

[45] *DeBlanc v. St. Tammany Par. Sch. Bd.*, 640 F. App'x 308, 313 (5th Cir. 2016) (per curiam) (quoting *St. John*, 299 F. App'x at 309).

[46] *St. John*, 299 F. App'x at 309 (emails at issue complain of disclosure, which is not protected under the ADA).

[47] *DeBlanc*, 640 F. App'x at 313.

[48] 29 C.F.R. Pt. 1630, App § 1630.8.

[49] *Erdman v. Nationwide Ins. Co.*, 582 F.3d 500, 510 (3rd Cir. 2009).

leave to take care of Dodson. He has not alleged any discriminatory comments or actions regarding Dodson's condition, nor has he alleged that Danieli's behavior was a result of Dodson's disability. By his own account, Besser explains "had [Dodson] not become disabled, [Besser] would not have taken FMLA leave, Danieli would not have made her inappropriate comments, and the chain of events leading to [Besser's] termination would not have been set in motion." In other words, it was his use of leave that triggered Danieli's "inappropriate comments." Besser's complaint regarding those comments and McBride's frustration with Besser do not constitute opposition to unlawful activity under the ADA because the ADA does not require employers to accommodate non-disabled workers by restricting their work schedule or allowing them to miss work to care for a disabled relative.[50]

Even accepting as true that Besser was fired for his use of leave, or for opposing comments by Danieli or McBride regarding his use of leave, such actions are not prohibited *under the ADA*, and opposition to those actions cannot constitute protected activity in support of Besser's ADA retaliation claim.

*       *       *

Accordingly, we AFFIRM the district court's judgment.

---

[50] 29 C.F.R. Pt. 1630, App § 1630.8.

No. 18-50291

JAMES L. DENNIS, Circuit Judge, concurring in part and dissenting in part:

I disagree with the majority's conclusion that John "Besser's protected activity is limited to his four uses of leave." Majority at 11. I would hold that Besser plausibly alleged protected activity by stating that he informed human resources ("HR") about Project Team Lead Kerry Danieli's hostile response to his use of leave to which he was entitled under the Family and Medical Leave Act ("FMLA"). Because Besser plausibly alleged that he was terminated from his job at the Texas General Land Office ("GLO") due to animosity that Contracts Department Director Kelly McBride bore towards him as a result of this protected activity, Besser's complaint properly stated a claim for relief. I would therefore reverse the district court's dismissal under FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6).

## I

The majority affirms by disregarding several of Besser's allegations of protected activity, which it justifies with a blanket statement that "[c]omplaints about an employer's actions that are not unlawful under the FMLA cannot form the basis of a retaliation claim." Majority at 9. Respectfully, I believe this is an incorrect and overly restrictive interpretation of the FMLA's "opposition clause," codified at 29 U.S.C. § 2615(a)(2). Instead, the provision should be read to protect not only an employee's opposition to actual violations of the law, but also opposition to conduct that the employee reasonably and in good faith perceives as violating the FMLA.[1]

---

[1] The majority contends that it need not address this argument because it was not raised in Besser's briefing. Majority at 14. But Besser squarely asserts throughout his briefing that his complaints about Danieli and participation in the ensuing investigation were protected activities for which he was unlawfully terminated. It is inherently necessary for this court to determine whether these activities were protected under the FMLA in order to evaluate his arguments, and the majority's failure to undertake that task is clearly unjustifiable.

A wide range of federal antidiscrimination statutes protect employees who report conduct they reasonably and in good faith believe to be unlawful, irrespective of whether the complained-of activity actually violates the law. *See Singletary v. Howard Univ.*, 939 F.3d 287, 297 n.2 (D.C. Cir. 2019) (collecting federal statutes). This includes 42 U.S.C. § 2000e–3(a), the antiretaliation provision in Title VII of the Civil Rights Act of 1964 after which 29 U.S.C. § 2615(a)(2) was modeled, and the legislative history of the FMLA indicates the two prohibitions are "intended to be construed in the same manner." *Gordon v. U.S. Capitol Police*, 778 F.3d 158, 161 (D.C. Cir. 2015) (quoting S. Rep. No. 103–3, at 34–35 (1993); H.R. Rep. No. 103–8, at 46 (1993))); *Payne v. McLemore's Wholesale & Retail Stores*, 654 F.2d 1130, 1140 (5th Cir.1981). The Department of Labor's ("DOL") official interpretation of the FMLA's opposition clause is more consistent with this broader reading than the interpretation employed by the majority: Employees are "protected if they oppose any practice which they reasonably believe to be a violation of the Act or regulations," regardless of whether the practice is in fact unlawful. 29 C.F.R. § 825.220(e).

The purpose of federal discrimination laws also supports this reading of § 2615(a)(2). In enacting these laws, Congress selected "[c]ooperation and voluntary compliance" as the "preferred means for achieving" the statutory goals—namely, bringing about "equality of employment opportunities by eliminating those practices that discriminate" on impermissible bases. *Berg v. La Crosse Cooler Co.*, 612 F.2d 1041, 1045 (7th Cir. 1980) (quoting *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 44 (1974)). Limiting retaliation protections to only those employees who oppose practices that are actually unlawful would undermine Congress's central purpose of encouraging "the frank and nondisruptive exchange of ideas between employers and employees." *Id.* "Such a narrow interpretation . . . would not only chill the legitimate

19

assertion of employee rights . . . but would tend to force employees to file formal charges rather than seek conciliation or informal adjustment of grievances." *Id.* (quoting *Sias v. City Demonstration Agency*, 588 F.2d 692, 695 (9th Cir. 1978)).  This is because the filing of formal charges is explicitly protected under the statute regardless of the merits of a claim.[2]  And the negative effect on informal discourse would not be balanced by any reciprocal benefit, as the restrictive interpretation "serves no redeeming statutory or policy purposes of its own." *Id.*

Given Congress's unequivocal statement that it intended the opposition clause in the FMLA to be "construed in the same manner" as the antiretaliation provision in Title VII, *Gordon*, 778 F.3d at 161 (quoting S. Rep. No. 103–3, at 34–35), as well as the deference that we presumably owe to the Department of Labor's interpretation of the FMLA, *see Chevron, U.S.A., Inc. v.*

---

[2] Both the FMLA and Title VII also contain a "participation clause" that prohibits an employer from retaliating against an employee who institutes or participates in investigations or proceedings related to the respective statutes. *See* 29 U.S.C. § 2615(b); 42 U.S.C. § 2000e–3(a).  Most courts that have considered the issue have held that Title VII's participation clause prohibits only retaliation based on an employee's participation in an Equal Employment Opportunity Commission ("EEOC") investigation, and the clause accordingly does not protect cooperation with an employer's internal investigation.  *See, e.g. Townsend v. Benjamin Enterprises, Inc.*, 679 F.3d 41, 49 (2d Cir. 2012); *E.E.O.C. v. Total Sys. Servs., Inc.*, 221 F.3d 1171, 1174 (11th Cir. 2000); *Vasconcelos v. Meese*, 907 F.2d 111, 113 (9th Cir. 1990).  However, in so holding, courts have generally relied at least in part on the plain language of Title VII's participation clause, which prohibits retaliation for participation "in an investigation, proceeding, or hearing *under this subchapter*." 42 U.S.C. § 2000e–3(a) (emphasis added).  By contrast, the language of the FMLA participation clause is much broader, protecting an employee who institutes "any proceeding, under *or related to* this subchapter" or who gives "information in connection with any inquiry or proceeding *relating to* any right provided under this subchapter." 29 U.S.C. § 2615(b)(1)-(2).  The caselaw on this point is sparse, but considering this difference in statutory language, it is at least arguable that Besser's participation in the HR interviews regarding the harassment he endured for exercising FMLA rights would alternatively qualify for protection under the FMLA's participation clause, as the conduct would on its face seem to constitute "providing information in connection with an inquiry . . . relating to [a] right provided under" the FMLA. 29 U.S.C. § 2615(b)(2).

*Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984),[3] I would hold that employees may state a claim for relief under the FMLA by plausibly alleging that they suffered an adverse employment action as a result of their opposition to conduct or practices that they reasonably believed violated the FMLA. To survive the GLO's motion to dismiss under Rule 12(b)(6), then, Besser need only plausibly allege that he honestly and reasonably believed Danieli's harassment violated his rights under the FMLA, and that his opposition to her behavior motivated the GLO to terminate him. *See Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) ("We construe facts in the light most favorable to the nonmoving party, as a motion to dismiss under 12(b)(6) is viewed with disfavor and is rarely granted. Dismissal is appropriate only if the complaint fails to plead enough facts to state a claim to relief that is plausible on its face." (cleaned up)). Besser has done so.

## II.

Instead of recognizing Besser's allegations that he believed in good faith that Danieli's hostile comments violated the FMLA, the majority instead analyzes Danieli's hostile comments under the frameworks set forth in *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 380 (5th Cir. 2010), and *Laxton v. Gap Inc.*, 333 F.3d 572, 583 (5th Cir. 2003), in which this court evaluated when comments by employers or coworkers may be evidence that discriminatory intent motivated an adverse employment action. Majority at 9-10. This misframes Besser's contention. His complaint did not allege that Danieli's comments were evidence that a different employment action was discriminatory. Rather, Besser asserted that the harassment was *itself* unlawful discrimination, and that his opposition to it was therefore protected activity. Specifically, Besser alleged that the GLO violated his rights by

---

[3] *See also Woods v. START Treatment & Recovery Centers, Inc.*, 864 F.3d 158, 168–69 (2d Cir. 2017) (applying *Chevron* deference to a related provision of 29 C.F.R. § 825.220).

No. 18-50291

"harassing and terminating [him] . . . due to his protected complaints regarding *FMLA interference and retaliation by Danieli*." (Emphasis added.) *Jackson* and *Laxton* are thus inapposite. Instead, our inquiry should turn on the analysis set out in the preceding discussion: whether Besser was objectively reasonable in believing that Danieli's harassment violated the FMLA,[4] whether Besser's reporting Danieli's behavior to McBride and later HR constituted opposition, and whether Besser has alleged a causal connection between this reporting and Besser's termination. *See supra* Part I.

To the first point, 29 U.S.C. § 2615(a)(1) prohibits an employer "from interfering with or restraining an employee from exercising, or attempting to exercise, their FMLA rights." The term "interference" includes "not only refusing to authorize FMLA leave, but discouraging an employee from using such leave." *Cuellar v. Keppel Amfels, L.L.C.*, 731 F.3d 342, 346 (5th Cir. 2013) (quoting 29 C.F.R. § 825.220(b)). Under the provision, "[a]n employer's action that deters an employee from participating in protected activities constitutes an 'interference' or 'restraint' of the employee's exercise of his rights." *Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1050 (8th Cir. 2006) (citing *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1124 (9th Cir.2001)). Trial courts have often found that statements by an employer that discourage an employee from taking FMLA leave violate 29 U.S.C. § 2615(a)(1). *See, e.g.*, *Jones v. Children's Hosp.*, 58 F. Supp. 3d 656, 669 (E.D. La. 2014) (finding employer could have violated FMLA when plaintiff alleged that supervisor told her she could not take FMLA leave because employer was short staffed).[5]

---

[4] At this stage, an evaluation of whether Besser alleged that he subjectively believed in good faith that Danieli's harassment violated the FMLA is trivial given that Besser's complaint asserted that Danieli's harassment did in fact violate the FMLA. The sincerity of this belief is a factual question that we need not consider on review of a 12(b)(6) dismissal.

[5] *See also Brown v. Lassiter-Ware, Inc.*, No. 6:11-CV-1074-ORL-36, 2013 WL 4456546, at *18 (M.D. Fla. Aug. 16, 2013), (finding employer could have violated FMLA when plaintiff

No. 18-50291

Besser alleged that Danieli made numerous harassing comments in response to his use of FMLA leave that would likely discourage a reasonable employee from taking further FMLA leave to which the employee was legally entitled. Specifically, Besser asserted that when he used FMLA leave to come in late for a week so that he could provide caregiver services to his husband, Danieli told him "it must be nice to come in late" and became defensive when he explained the gravity of his husband's health problems. Besser stated that another time when he informed Danieli of his intent to use FMLA leave, Danieli rolled her eyes at him and accused him of "milk[ing]" his husband's serious health condition. And, most pointedly, Besser alleges that when he updated a shared calendar to show that he would be taking two additional days of leave, Danieli came to his office and yelled and berated him for "always [being] off," and "taking advantage" of his husband's illness. Under the facts that Besser asserts, Danieli indicated that Besser should not take any more FMLA leave by telling him his "priority should be the GLO." When Besser asked Danieli to leave his office, he alleges, she refused and informed him that she would consider it insubordination if he declined to stay and suffer further browbeating. Besser states that Danieli's tirade was so loud and severe that his coworkers came to see what was wrong, and that another staff member

alleged that supervisor told him to "push through" if symptoms of his chronic illness recurred); aff'd, 620 F. App'x 888 (11th Cir. 2015); *Nixon v. Silverado Hospice of Houston*, No. CIV.A. H-12-0985, 2013 WL 3973980, at *4 (S.D. Tex. July 31, 2013) (finding employer could have violated FMLA when plaintiff alleged that office manager responsible for HR telephoned her while she was on FMLA leave and pressured her to return to work); *Traxler v. Multnomah Cty.*, No. CIV. 06-1450-KI, 2008 WL 282272, at *16 (D. Or. Jan. 29, 2008) (finding employer could have violated FMLA when plaintiff alleged that her supervisor complained about the amount of FMLA leave she had used and told her that she "dropped the ball" by taking FMLA leave); *Lynch v. City of Largo, Fla.*, No. 8:10-CV-1064-T-33TGW, 2011 WL 4634020, at *8 (M.D. Fla. Oct. 5, 2011) (finding employer could have violated FMLA when plaintiff alleged head of department repeatedly interrogated her about what was wrong with her and why she was using so much FMLA leave).

found Danieli's treatment of Besser unacceptable enough to report the incident to HR without any prompting from Besser.

Clearly, this kind of repeated, escalating harassment could amount to discouragement from taking FMLA leave.  The question remains whether Danieli's acts can be fairly attributed to the GLO, as 29 U.S.C. § 2615(a)(1) prohibits only "an employer" from interfering with FMLA rights.  The FMLA defines "employer" to include "any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer."  29 U.S.C. § 2611(4)(A)(ii)(I).  In interpreting the nearly identical definition appearing in the Fair Labor Standards Act, 29 U.S.C. § 203(d), this court has stated that "[t]he term employer includes individuals with managerial responsibilities and 'substantial control over the terms and conditions of the [employee's] work.'"  *Lee v. Coahoma Cty., Miss.*, 937 F.2d 220, 226 (5th Cir. 1991) (quoting *Falk v. Brennan*, 414 U.S. 190, 194 (1973)) (second alteration in original).  At this early stage of the proceeding, it is difficult to assess the degree to which Danieli's status as "Team Lead" granted her managerial responsibilities and control over Besser's working terms and conditions.  But based on Besser's allegations, Danieli at least held a leadership title that seemed to carry with it some authority to discipline Besser for insubordination, and she indeed appears to have considered Besser a subordinate who was obligated to follow her directives.  Given that we must construe facts and make inferences in favor of Besser at this stage, and that we need only consider whether Besser—who was not trained as a lawyer—was *reasonable* in his belief that Denieli's harassment was unlawful under the FMLA, I do not think it is necessary for us to engage in a nuanced legal evaluation to determine whether the employee nominally denoted Besser's direct superior in fact wielded enough control over him to be subject to the FMLA prohibition on

interference.[6] *See EEOC v. Rite Way Serv., Inc.*, 819 F.3d 235, 242 & n.5 (5th Cir. 2016) (evaluating the reasonable belief standard from the point of view of an employee who has not been trained or instructed on the law (citing *Boyer–Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 290 (4th Cir.2015) (en banc) (Wilkinson, J., concurring in part and dissenting in part))). Accordingly, I conclude that Besser plead facts that made his belief that Danieli's harassment constituted a violation of the FMLA reasonable.

Turning next to whether Besser's complaints to McBride and participation in HR interviews regarding Danieli's harassment constituted

---

[6] Even if it would be unreasonable for Besser to believe Danieli exercised enough control over his working terms and conditions to be prohibited from interfering with his FMLA rights under 29 U.S.C. § 2615(a)(1), courts have held in the Title VII context that reporting even a single isolated incident of harassment by a coworker can be protected activity if the harassment is so threatening or humiliating as to engender a reasonable belief that a hostile work environment is in progress. *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 268 (4th Cir. 2015); *see also Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (noting that an isolated harassment incident may amount to a negative change in terms and conditions of employment if very serious). Although the district court correctly noted that federal courts have not yet recognized an FMLA cause of action based on a hostile work environment, *see Smith-Schrenk v. Genon Energy Sen's., L.L.C.*, No. CIV.A. H-13-2902, 2015 WL 150727, at *4 (S.D. Tex. Jan. 12, 2015), there are principled reasons to believe that such an action should be cognizable.

Under Title VII, hostile work environment liability rests on a theory that, by using statutory language that prohibits discrimination in "terms, conditions, or privileges of employment," Congress intended "to strike at the entire spectrum of disparate treatment . . . in employment." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986) (quoting 42 U.S.C. § 2000e–2(a)(1); *Los Angeles Dept. of Water and Power v. Manhart*, 435 U.S. 702, 707 n. 13 (1978)). Accordingly, the statute prohibits harassment that is severe and pervasive enough to negatively alter the conditions of the target's employment. *Id.* at 67. By the same token, 29 U.S.C. § 2614(a)(1) requires an employer to restore an employee who returns from FMLA leave to a position with equivalent "benefits, . . . terms and conditions of employment" as the position the employee held prior to taking the leave, and it would follow that an employer could violate the FMLA by allowing severe or pervasive harassment to negatively alter the conditions of a returning employee's employment. Such a legal theory would be novel, but, again, we are not concerned with whether Danieli's harassment actually violated the FMLA, but only whether Besser was reasonable in believing that it did. Given that a nonfrivolous argument can be put forth that Danieli's behavior was in fact unlawful even if she qualifies only as Besser's coworker and not his superior, I would hold that Besser's belief was reasonable in either event.

opposition, the Supreme Court has defined "opposition" broadly. In *Crawford v. Metro. Gov't of Nashville & Davidson Cty., Tenn.*, 555 U.S. 271, 276 (2009), the Court adopted EEOC guidelines, stating, "When an employee communicates to her employer a belief that the employer has engaged in a form of employment discrimination, that communication virtually always constitutes the employee's opposition to the activity." *Crawford*, 555 U.S. at 276 (citing 2 EEOC Compliance Manual §§ 8–II–B(1), (2), p. 614:0003 (Mar. 2003)) (cleaned up). The Court elaborated that the protections apply not only when an employee affirmatively makes an internal complaint on the employee's own initiative, but also when an employee responds to questions posed by an employer in an internal investigation:

> There is, then, no reason to doubt that a person can 'oppose' by responding to someone else's question just as surely as by provoking the discussion, and nothing in the statute requires a freakish rule protecting an employee who reports discrimination on her own initiative but not one who reports the same discrimination in the same words when her boss asks a question.

*Id.* at 277–78. Again, this broad reading makes sense given that the "central purpose" of federal discrimination statutes is to eliminate discrimination by encouraging "the frank and nondisruptive exchange of ideas between employers and employees," *Berg*, 612 F.2d at 1045. Though a Title VII case, as discussed, this reasoning applies equally here. *Gordon*, 778 F.3d at 161 (quoting S. Rep. No. 103–3, at 34–35; H.R. Rep. No. 103–8, at 46). And, under such a standard, Besser's complaints to McBride and the statements Besser gave during his interviews with HR plainly constitute opposition.

What remains is the question of whether Besser has alleged a causal connection between his protected conduct and his termination. As the majority acknowledges, Besser asserts that McBride was angry about his role in

Danieli's termination—that is, because Besser provided information to HR during its investigation of Danieli's harassment. Majority at 9. Besser alleges that when he commented to McBride that her treatment of the project managers following Danieli's dismissal had created a stressful work environment, "McBride very much lost her temper," accused Besser of reporting Danieli's behavior and causing her termination, told Besser that he had crossed a line, and warned him that he had better "watch [him]self." Besser states McBride later accused him of being disloyal to the GLO and stated that he had "messed everything up." Drawing reasonable inferences in favor of Besser, as we are required to do at this stage of the proceeding, *see Leal v. McHugh*, 731 F.3d 405, 410 (5th Cir. 2013), we can surmise that these comments were also in reference to the role Besser played in Danieli's termination. The majority accurately states that "Besser has not sufficiently pled that McBride's animosity was directed towards his use of leave." Majority at 13. But Besser *has* alleged that McBride's animosity was directed towards another FMLA protected activity—opposing Danieli's harassment that he reasonably believed to be a violation of the FMLA. And after Besser filed a complaint with HR regarding this animosity, he was explicitly fired because of the discord between him and McBride. Unlike the cases the majority cites, this is not a case where Besser relies on "temporal proximity alone" to show the requisite causal connection. Majority at 12. Rather, Besser has alleged that McBride and a representative from HR made express statements linking his termination to activity protected by the FMLA.

***

In sum, Besser has sufficiently alleged that he engaged in protected activity when he reported Danieli's harassment that he reasonably believed violated the FMLA, and that this protected activity resulted in his termination, which is indisputably an adverse employment action. I would therefore reverse

No. 18-50291

the district court's dismissal and hold that Besser has stated a plausible claim for relief. Respectfully, the majority errs by concluding otherwise.